STEPHEN R. HARRIS, ESQ.
Nevada Bar No. 001463
HARRIS LAW PRACTICE LLC
6151 Lakeside Drive, Suite 2100
Reno, Nevada 89511
Telephone:  (775) 786-7600
E-Mail: steve@harrislawreno.com
Attorneys for Plaintiff

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| IN RE: | Case No.: BK-15-51099-btb |
| KENNETH PATTERSON | (Chapter 7) |
| Debtor. | |
| _____/ | |
| BASIL M. HANTASH, | Adversary Case No. _____ |
| Plaintiff, | **ADVERSARY COMPLAINT FOR DENIAL OF DISCHARGE OF OBLIGATION (11 U.S.C. § 523(a)(6) and 523(a)(2)** |
| vs. | |
| KENNETH S. PATTERSON | |
| Defendant. | |
| _____/ | |

Plaintiff BASIL M. HANTASH ("Plaintiff""), by and through his counsel, Stephen R. Harris, Esq., of Harris Law Practice LLC, as and for his claims for relief against the Defendant, KENNETH S. PATTERSON ("Debtor" or "Defendant"), hereby avers and alleges as follows:

JURISDICTIONAL ALLEGATIONS

1.      The above-named case was commenced by the filing of a Voluntary Petition for Relief under Chapter 7 of Title 11, United States Code, by Kenneth Patterson, on August 9, 2015.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

1

2.      This adversary proceeding arises under Title 11 United States Code, and that the above entitled Court therefore has jurisdiction over this matter pursuant to Sections 157 and 1334 of Title 28, United States Code.

3.      This adversary proceeding is brought pursuant to Section 523(a)(6) of Title 11, United States Code, Section 157(b)(2)(j) of Title 28, United States Code, and Rule 7001 of the Federal Rules of Bankruptcy Procedure, and is therefore a core proceeding. The Plaintiff consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

4.      Plaintiff Basil M. Hantash is a judgment creditor of Kenneth S. Patterson by virtue of a judgment entered in the Superior Court of the State of California In and For the County of Fresno in Case No. 13-CECG-0387.

5.      Defendant Kenneth S. Patterson is the Debtor in the above-named Chapter 7 bankruptcy case and is allegedly a resident of Douglas County, State of Nevada.

                              GENERAL ALLEGATIONS

6.      Plaintiff incorporates the allegations contained in paragraphs 1 through 5 as though fully set forth herein.

7.      The Debtor filed his Chapter 7 Petition on August 9, 2015.

8.      A Statement of Decision filed October 10, 2014, and a Judgment filed on March 30, 2015 (collectively the "Judgment") in Case No. 13-CECG-00837 in the Superior Court of California, County of Fresno, Unlimited Civil Division ("Civil Case") was entered in favor of Basil M. Hantash on September 19, 2014. In that Judgment, the Plaintiff was awarded compensatory damages in the amount of $209,433.02 on the basis of breach of contract and conversion, and punitive damages in the amount of $100,000.00, plus costs of suit. A copy of the Judgment is attached hereto as Exhibit A.

9.      The Civil Case arose from the Defendant's tenancy in real property owned by the Plaintiff located at 10336 N. Archie Avenue, Fresno, California ("Real Property"). The Defendant abandoned the Real Property at some time between June and August of 2012. The

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

1    Plaintiff resides in Northern California, and was unaware of the Defendant's abandonment of

2    the Real Property until November of 2012.  The Plaintiff then travelled to the Real Property on

3    December 2, 2012.   At that time it was determined that significant damage had been done to the

4    Real Property by Defendant – appliances and the sound system had been removed from the

5    house, marijuana had been left in the house, and the house required approximately $70,000.00

6    in repairs.

7          10.     The Defendant's actions in damaging Plaintiff's Real Property were wrongful,

8    intentional and done necessarily to produce harm without just cause or excuse.

9          11.     The Civil Court determined that the Plaintiff was entitled to a judgment in the

10    total amount of $309,433.02.  The Judgment is based on (1) conversion of the Plaintiff's

11    personal property by removal of appliances from the home with an estimated value of

12    $38,663.16, (2) $100,000.00 in punitive damages for that conversion; (3) breach of contract on

13    the basis of unpaid rent from December of 2013 through March of 2014 in the amount of

14    $131,510.47, as the house had been deemed uninhabitable, late fees in the amount of $7,515.83,

15    $70,406.72 for damage to the premises (which sum includes the conversion value); and (4)

16    provided that the Plaintiff could collect costs of suit.

17          12.     The Judgment amount is non-dischargeable on the basis that it is the result of

18    "willful and malicious injury by the debtor to another entity or to the property of another

19    entity", as provided in 11 U.S.C. § 523(a)(6).

20          13.     Additionally, at the time Defendant submitted his application to rent the Real

21    Property, Defendant made material fraudulent representations to Plaintiff in order to

22    fraudulently induce the Plaintiff to lease the property to the Defendant, claiming to own

23    significantly valuable real property in Las Vegas, Nevada.  Those claims later proved to be

24    untrue, and no such properties are indicated in the Defendant's Schedule A.

FIRST CLAIM FOR RELIEF

(Willful and Malicious Destruction of Property 11 U.S.C § 523(a)(6))

27          14.     Plaintiff alleges, realleges and incorporates by reference each and every

28    allegation contained in paragraphs 1 through 13 as if fully set forth herein.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

3

15.    The Debtor willfully and maliciously damaged the Real Property owned by the Plaintiff, willfully and maliciously converted the use of the Real Property to his benefit without consideration to the Plaintiff with the intent to do harm, and willfully and maliciously caused the Plaintiff to incur attorney's fees and costs.

16.    Defendant's actions against the Plaintiff were without just cause or excuse.

17.    Defendant's willful and malicious destruction of Plaintiff's property caused damages to the Plaintiff in the amount of the Judgement.

18.    As a result of the foregoing, discharge of the Defendant's Judgment obligation to Plaintiff must be denied pursuant to 11 U.S.C. § 523(a)(6).

SECOND CLAIM FOR RELIEF
(Fraud – Nondischargeability of Claim based on §523(a)(2)

19.    Plaintiff alleges, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 18 as if fully set forth herein.

20.    Defendant fraudulently induced the Plaintiff to lease the Real Property to him by providing improper and untrue financial statements indicating that the Defendant had the financial strength to satisfy his obligations to the Plaintiff under the Lease Agreement.

21.    As a result of the Defendant's fraudulent financial representations, Plaintiff was deceived into entering into a lease agreement that the Defendant had no intention of honoring, thereby causing damages to the Plaintiff in the amount of the Judgment.

22.    As a result of the foregoing, discharge of the Defendant's Judgment obligation to Plaintiff must be denied pursuant to 11 U.S.C. § 523(a)(2).

WHEREFORE, Plaintiff prays for judgment against the Defendant above named as follows:

1.   On the First Claim for Relief, for denial discharge as to Defendant's Judgment obligation to Plaintiff in the amount of $309,433.01 plus costs of suit, pursuant to 11 U.S.C § 523(a)(6);

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

4

2.  On the Second Claim for Relief, for denial of discharge as to Defendant's Judgment obligation to Plaintiff in the amount of $309,433.01 plus costs of suit pursuant to 11 U.S.C. § 523(a)(2); and

3.  For such other relief as the Court may deem appropriate under the circumstances.

DATED this 6th day of November, 2015.

HARRIS LAW PRACTICE LLC
STEPHEN R. HARRIS, ESQ.


*/s/ Stephen R. Harris*
_____
Attorneys for Plaintiff

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE, LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

5

# EXHIBIT "A"

# EXHIBIT "A"

 

JUD-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| ARTURO E. SANDOVAL, ESQ. SBN 227077<br>FOLEY & MANSFIELD, PLLP<br>300 LAKESHORE DRIVE<br>SUITE 1900<br>OAKLAND, CA. 94612 | |

TELEPHONE NO.:          FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):* asandoval@foleymansfield.com
ATTORNEY FOR *(Name):*

**FILED**

MAR 3 0 2015

FRESNO COUNTY SUPERIOR COURT
By _____
DEPT. 502

SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO
STREET ADDRESS: 1130 O Street, Fresno, CA 93721
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF: Basil M. Hantash

DEFENDANT: Kenneth S. Patterson

| JUDGMENT | | CASE NUMBER: |
|---|---|---|
| ☐ By Clerk ☐ By Court | ☐ By Default ☐ On Stipulation | ☒ After Court Trial ☐ Defendant Did Not Appear at Trial | 13 CECG 00837 |

## JUDGMENT

1. ☐ **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐ **Clerk's Judgment** (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☐ **Court Judgment** (Code Civ. Proc., § 585(b)). The court considered
      (1) ☐ plaintiff's testimony and other evidence.
      (2) ☐ plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☐ **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☐ the signed written stipulation was filed in the case.
   c. ☐ the stipulation was stated in open court ☐ the stipulation was stated on the record.

3. ☒ **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time):* June 2, 2014, June 30, 2014, and July 1, 2014
      before *(name of judicial officer):* Hon. Donald S. Black
   b. Appearances by:
      ☒ Plaintiff *(name each):*          ☒ Plaintiff's attorney *(name each):*
      (1) Basil M. Hantash                (1) Arturo E. Sandoval
                                              Foley & Mansfield, PLLP
      (2)                                 (2) Jeffrey M. Gebhardt
                                              Foley & Mansfield, PLLP
      ☐ Continued on Attachment 3b.

      ☒ Defendant *(name each):*          ☒ Defendant's attorney *(name each):*
      (1) Kenneth S. Patterson           (1) Douglas V. Thornton
                                              Rummonds Thornton, LLP
      (2)                                 (2) Brian N. Folland
                                              The Folland Law Group
      ☐ Continued on Attachment 3b.

   c. ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.

   d. ☒ A statement of decision (Code Civ. Proc., § 632) ☐ was not ☒ was   requested.

Form Approved for Optional Use
Judicial Council of California
JUD-100 [New January 1, 2002]

**JUDGMENT**

Legal
Solutions
℠ Plus

Code of Civil Procedure, §§ 585, 664.6

FILED BY FAX

 

| PLAINTIFF: Basil M. Hantash | CASE NUMBER: |
|---|---|
| DEFENDANT: Kenneth S. Patterson | 13 CECG 00837 |

**JUDGMENT IS ENTERED AS FOLLOWS BY:**  ☐ THE COURT  ☐ THE CLERK

4. ☐ **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties.

5. **Parties.** Judgment is
   a. ☒ for plaintiff *(name each)*:
      Basil M. Hantash

      and against defendant *(names)*:
      Kenneth S. Patterson

      ☐ Continued on Attachment 5a.

   b. ☐ for defendant *(name each)*:

   c. ☐ for cross-complainant *(name each)*:

      and against cross-defendant *(name each)*:

      ☐ Continued on Attachment 5c.

   d. ☐ for cross-defendant *(name each)*:

6. **Amount.**
   a. ☒ Defendant named in item 5a above must pay plaintiff on the complaint:

   c. ☐ Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| | | | | |
|---|---|---|---|---|
| (1) | ☒ | Damages | $ | 209,433 |
| (2) | ☒ | Prejudgment interest at the annual rate of          % | $ | |
| (3) | ☒ | Attorney fees | $ | |
| (4) | ☒ | Costs | $ | |
| (5) | ☒ | Other *(specify)*: Punitive | $ | 100,000 |
| (6) | | **TOTAL** | $ | 309,433 |

| | | | | |
|---|---|---|---|---|
| (1) | ☐ | Damages | $ | |
| (2) | ☐ | Prejudgment interest at the annual rate of          % | $ | |
| (3) | ☐ | Attorney fees | $ | |
| (4) | ☐ | Costs | $ | |
| (5) | ☐ | Other *(specify)*: | $ | |
| (6) | | **TOTAL** | $ | |

   b. ☐ Plaintiff to receive nothing from defendant named in item 5b.
      ☐ Defendant named in item 5b to recover costs $
         ☐ and attorney fees $

   d. ☐ Cross-complainant to receive nothing from cross-defendant named in item 5d.
      ☐ Cross-defendant named in item 5d to recover costs $
         ☐ and attorney fees $

7. ☒ Other *(specify)*: The Court's statement of decision is attached.

Date: 3-30-15

☐ _____
Hon. Donald S. Black
JUDICIAL OFFICER

Date: _____
☐ Clerk, by _____ , Deputy

---

(SEAL)

**CLERK'S CERTIFICATE** *(Optional)*

I certify that this is a true copy of the original judgment on file in the court.

Date:

Clerk, by _____ , Deputy

Page 2 of 2

| SUPERIOR COURT OF CALIFORNIA COUNTY OF FRESNO<br>Civil Department, Central Division<br>1130 "O" Street<br>Fresno, CA 93724<br>(559) 457-1900 | FOR COURT USE ONLY |
|---|---|
| TITLE OF CASE:<br><br>Basil M. Hantash vs. Kenneth S Patterson | |
| CLERK'S CERTIFICATE OF MAILING | CASE NUMBER:<br><br>13CECG00837 DSB |

Name and address of person served:

Arturo Sandoval
Foley & Mansfield P.L.L.P
300 Lakeside Drive Ste #1900
Oakland, CA 94612

---

### CLERK'S CERTIFICATE OF MAILING

I certify that I am not a party to this cause and that a true copy of the Statement of Decision was mailed first class, postage fully prepaid, in a sealed envelope addressed as shown below, and that the notice was mailed at, Fresno California, on:

Date:   October 16, 2014                          Clerk, by _____, Deputy
                                                                         N. Loveless

Arturo Sandoval, Foley & Mansfield P.L.L.P, 300 Lakeside Drive Ste #1900, Oakland CA 94612
Kenneth Patterson, 2261 Rush Ave, Fresno CA 93730

OCT 1 6 2014

BGN-06 R09-00                           CLERK'S CERTIFICATE OF MAILING



FILED

OCT 1 0 2014

FRESNO COUNTY SUPERIOR COURT
By_____
DEPT. 502

SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO

UNLIMITED CIVIL DIVISION, B.F. SISK COURTHOUSE

| | |
|---|---|
| BASIL M. HANTASH,<br><br>               Plaintiff,<br><br>   v.<br><br>KENNETH S. PATTERSON, and DOES<br>1 to 25, inclusive,<br><br>              Defendants. | Case No.: 13CECG00837<br><br>STATEMENT OF DECISION |

I.

INTRODUCTION

    This case presents a landlord-tenant dispute related to alleged unpaid rent and late fees, alleged damage cause by the tenant to the demised property, and alleged conversions of appliances and other personal property from the premises.   Plaintiff, Basil M. Hantash, the owner/landlord, is represented by Foley & Mansfield P.L.L.P., by Arturo E. Sandoval.  Defendant, Kenneth S. Patterson, the tenant, is represented by The Folland Law Group, by Brian

1



Folland, and Rummonds, Barrons & Thornton, by Douglas V. Thornton. The matter was tried before the undersigned, sitting without a jury. Following the trial, the parties submitted briefs and proposed statements of decision. After having considered the evidence and the parties' briefs, the court issued a Tentative and Proposed Statement of Decision.

After the issuance of the court's Tentative and Proposed Statement of Decision, defendant filed "Defendant's Opposition to Tentative and Proposed Statement of Decision" and plaintiff filed "Plaintiff's Reply to Defendant's Opposition to Tentative and Proposed Statement of Decision." The court has read and considered these pleadings. Recognizing that the statement of decision is only required to explain the legal and factual basis of the decision as to each of the principal controverted issues at trial (Cal. Civ. Proc. Code § 632), and that the court need not discuss each issue in a party's objection (*Wolf v. Lipsy* (1985) 163 Cal. App. 3d 633, 643), or how it resolved intermediate evidentiary conflicts or respond point by point to the various issues posed in the request for statement of decision (*Muzquiz v. City of Emeryville* (2000) 79 Cal. App. 4th 1106, 1126), the court now issues this Statement of Decision.

///
///
///
///
///
///
///

2

## II.

## STATEMENT OF FACTS[1]

Plaintiff, a practicing physician, is the owner of the subject property, which is located at 10336 N. Archie Avenue, Fresno, California.  The property is a relatively large, single family home, located in an upscale, gated subdivision in Northeast Fresno near Fort Washington Country Club.

After several email communications, plaintiff and defendant entered into a written lease agreement, the terms of which included:

- Payment of rent of $3,561 per month.
- Commencing March 16, 2010 and expiring February 28, 2011.
- Occupants of the premises limited to defendant "and family."
- Requirement that subletting or assigning of the lease be done only with plaintiff's written permission.
- Defendant's agreement that the premises had been inspected and acknowledgement that "all items, fixtures, appliances, and appurtenances are in complete working order."
- Defendant's agreement to keep the premises in "neat and sanitary condition."
- Defendant's agreement not to make alterations, including painting or wallpapering, without plaintiff's written consent.
- Defendant's agreement to pay a late charge of 6% of the current rental amount if rent is not paid when due.

[1] The court has considered testimony of the witnesses and other evidence, resolved conflicts in the evidence, and finds the facts to be as stated herein.

3

- Defendant's agreement that no pets shall be kept on the premises without plaintiff's written consent.

When defendant went into possession of the property it was in excellent condition. Appliances were high end and in good working order. They included the usual kitchen appliances such as a refrigerator, stove, and dishwasher, as well as an air purification system and surround sound system with speakers.

Although defendant was perpetually late in making his rent payments under the lease, the parties entered into a second lease effective March 1, 2011.[2] The term of the second lease was March 1, 2011 to February 28, 2012. Under the second lease, the rent was increased to $4,000 per month, but defendant was given a ten day grace period after the rent was due during which no late fee would be charged. Rent increases were limited to annual consumer price index plus two per cent. Otherwise, in material respects, the provisions of the second lease were the same as the provisions of the first lease.

When the second lease expired on February 28, 2012, though defendant continued to occupy the premises, the parties did not enter into a new lease. Rather, defendant continued in possession pursuant to a verbal agreement pursuant to which defendant agreed to pay $4,250 per month in rent and the terms and conditions of the expired lease continued in effect.

During the course of defendant's tenancy, people other than defendant's family occupied the premises. Among others, defendant's fiancée lived there for at least a time. In addition, as has been mentioned, defendant was virtually

---

[2] Although defendant apparently denies signing the second lease, he did not testify at the trial and the court, as the trier of fact, has compared the signature on the second lease to the signature on the first lease, as to which there is no dispute, and finds defendant did sign the second lease. Moreover, the circumstantial evidence suggests defendant did sign the second lease.

4

always, if not always, late in paying his rent. As a result of these facts, plaintiff commenced an unlawful detainer proceeding against defendant in March, 2012.

Though it is uncertain when defendant and the others who were occupying the property actually left, they never formally relinquished possession and plaintiff did not learn that the property was vacant until around Thanksgiving, 2012 when he received a telephone call from an employee of the management company for the homeowners' association, John Shero. Among other things, Shero advised plaintiff that the property appeared to be vacant. On December 2, 2012, plaintiff visited the property and found that it indeed was vacant and that it was in terrible condition. The pool was green and mosquito infested. Appliances and the surround sound system had been removed from the house. There were large quantities of marijuana and drug paraphernalia in the garage. In the house were various items of mail addressed to defendant.[3]

Plaintiff has repaired most of the damage to the house and replaced the missing appliances. He has incurred costs related to those activities in the total amount of $70,406.72, which he seeks from defendant. He also seeks unpaid rent, late fees, a partially unpaid deposit, additional tenant fees, pet

---

[3] Though defendant did not testify, the court understands defendant contends the damage to the house was caused by squatters. The evidence belies this. Officer Valdez testified the neighborhood did not lend itself to squatters because of attentive neighbors. There were no mattresses of food wrappings among the refuse found in the house. Officer Valdez further testified that there were no pry marks at the point of entry, which indicates the vandalism was done by someone familiar with the property. Officer Valdez also testified that it is unusual in a standard burglary for large items, such as appliances to be taken because there simply is not enough time to do so. Finally, Kim Jacobsen, a neighbor, testified that after defendant moved out, he saw defendant in the driveway with a truck and large trailer. The circumstantial evidence overwhelmingly supports the finding that it was defendant who removed the appliances and other property and caused the damage and defendant himself did not deny that he did so.

5



fees, and legal fees. Finally plaintiff seeks punitive damages related to defendant's alleged misrepresentation of his financial condition prior to the first lease and his removal of appliances and other property from the house.

Defendant disputes that plaintiff is entitled to some of the late fees he seeks, the additional tenant fee, and the pet fee. He also contends plaintiff did not prove he was responsible for the removal of plaintiff's property. He also seeks a credit for monies he was required to expend for repairs to the house during his tenancy.

As will be explained below, the court will find plaintiff has proven his claim for breach of contract and will award damages for unpaid rent through the time the house was made habitable on March 22, 2013. The court will also award damages for some of the late fees sought by plaintiff, but will not include compound interest as computed by plaintiff. Relief will be denied for pet fees, which were not included in the lease or otherwise agreed to and the additional tenant who was not a family member. The court will also award plaintiff damages for conversion, including punitive damages. The court will deny relief for fraud, which was not proven and will deny defendant credit for repairs he allegedly had made to the house.

///

///

///

///

///

///

///

6

III.

DISCUSSION

A. Breach of Contract.

To recover damages for breach of contract, plaintiff must prove all of the following: (1) that plaintiff and defendant entered into a contract; (2) that plaintiff did all, or substantially all of the significant things that the contract required him to do, or that his performance was excused; (3) that all conditions required by the contract for defendant's performance had occurred or were excused; (4) that defendant either failed to do something the contract required or did something the contract prohibited; and, (5) that plaintiff was harmed by that failure. (Judicial Council of California Civil Jury Instructions (2013) CACI No. 303.)

The court finds the parties entered into two written leases and thereafter a month-to-month tenancy on the same terms and conditions as the written lease that had just expired. (Cal. Civ. Code § 1945.) Under these agreements, defendant was required to, among other things: (1) pay rent in the amounts and at the times specified therein; (2) pay late fees in the amounts specified therein; (3) keep the premises in neat and sanitary condition; and, (4) make no alterations to the premises. In addition, defendant was precluded under the agreements from (1) having non-family members reside on the property; (2) having animal on the property without plaintiff's prior written consent.

The court further finds plaintiff performed all conditions required by him to be performed under the agreements between the parties. Specifically,

7



plaintiff made available the premises located at 10336 N. Archie in habitable condition for occupancy by defendant and his family.

Defendant, however, breached the agreements between the parties by completely failing to pay rent when it was due, failing to pay late fees, and allowing non-family members to reside on the property.  He also breached the agreements by altering them in that he removed appliances and other appurtenances and by allowing them to become filthy.  Finally, defendant breached the agreements between the parties by allowing pets to stay on the premises.

Plaintiff has been damaged by defendant's breaches.  No evidence was received as to damages caused by having pets on the property and there was no provision in any of the agreements between the party permitting plaintiff to charge $100 per month for pets.  Further, no damages are awarded for allowing non-family members to stay on the property because there was no evidence that plaintiff gave defendant written consent, which was necessary under the agreements to trigger the monthly fee.  However, the court finds plaintiff was damaged in the amount of rent and late fees defendant failed to pay, together with the damage caused by defendant's alteration of and damage to the property and his failure to keep the property neat and tidy.

As to rent, the court awards plaintiff damages of $131, 510.47, consisting of the unpaid rent reflected on Exhibit 203, together with rent for December, 2013 through March, 2014, when the premises were relet.  The agreements between the parties permit late fees calculated on the "current rental amount."  The court interprets "current rental amount" to mean only the rent due for the current month, and not all of the unpaid rent.  The

8

agreements do not permit plaintiff to compound late fees or to assess late fees monthly on the total unpaid rent to date, as plaintiff has done. Accordingly, the court awards damages for late fees of $7,515.83, again adding late fees for four months to the amount computed on Exhibit 203. Finally, the court awards damages for alterations and damage to the premises of $70,406.72. Plaintiff's total damages for breach of contract are $209,433.02.

B. Fraud.

To establish a claim for fraud plaintiff must prove: (1) defendant represented an important fact was true; (2) the representation was false; (3) defendant knew the representation was false when he made it or made it recklessly and without regard for its truth; (4) that defendant intended that plaintiff rely on the representation; (5) plaintiff reasonably relied on the representation; (6) plaintiff was harmed; and, (7) plaintiff's reliance on the representation was a substantial factor in causing his harm. (Judicial Council of California Civil Jury Instructions (2013) CACI No. 1900.)

The court resolves the fraud claim in defendant's favor. Plaintiff argued defendant knowingly misrepresented his financial condition before the parties entered into the first lease. While it is correct that defendant made a representation of his financial condition that indicated a considerable net worth, including ownership of a very valuable piece of real estate in Las Vegas, the court finds plaintiff did not prove the representation was false.

9

There was no direct evidence of defendant's financial condition at trial. Plaintiff argues the court may infer the falsity of the representation from the fact that defendant did not pay his rent. However, no evidence was introduced which suggested there were not other possible causes for defendant's failure to pay his rent and the court is unwilling to make the leap required to infer it was because his financial condition was not as he represented.

C. Conversion.

Conversion requires proof: (1) that plaintiff owned certain personal property; (2) that defendant intentionally and substantially interfered with plaintiff's property by taking possession of it or destroying it; (3) that plaintiff did not consent; (4) that plaintiff was harmed; and, (5) that defendant's conduct was a substantial factor in causing plaintiff's harm. (Judicial Council of California Civil Jury Instructions (2013) CACI No. 2100.)

The court finds defendant removed items of personal property from the premises without plaintiff's consent and has refused to return any of them. The damages suffered by plaintiff as reflected in items 1 (Subzero) through 20 (wrought iron fence), 22 (solar landscaping light replacement), and 24 (pool sweeper) on page 2 of Exhibit 203 are $38,663.26. These damages are duplicative of some of the damages awarded plaintiff for breach of contract and will only be reflected once in the court's judgment.

///

///

10



D. Punitive Damages.

CACI 3949 provides as follows:

You must now decide the amount, if any, that you
should award [name of plaintiff] in punitive damages.
The purposes of punitive damages are to punish a
wrongdoer for the conduct that harmed the plaintiff
and to discourage similar conduct in the future.
There is no fixed formula for determining the amount
of punitive damages, and you are not required to
award any punitive damages. If you decide to award
punitive damages, you should consider all of the
following factors separately for each defendant in
determining the amount:

(a) How reprehensible was that defendant's conduct?
In deciding how reprehensible a defendant's conduct
was, you may consider, among other factors:

1 Whether the conduct caused physical harm;

2 Whether the defendant disregarded the health or
safety of others;

3 Whether [name of plaintiff] was financially weak or
vulnerable and the defendant knew [name of plaintiff]
was financially weak or vulnerable and took advantage
of [him/her/it];

11

4 Whether the defendant's conduct involved a pattern
or practice; and

5 Whether the defendant acted with trickery or deceit.

(b) Is there a reasonable relationship between the
amount of punitive damages and [*name of plaintiff*]'s
harm [or between the amount of punitive damages and
potential harm to [*name of plaintiff*] that the defendant
knew was likely to occur because of [his/her/its]
conduct]?

(c) In view of that defendant's financial condition, what
amount is necessary to punish [him/her/it] and
discourage future wrongful conduct? You may not
increase the punitive award above an amount that is
otherwise appropriate merely because a defendant has
substantial financial resources. [Any award you
impose may not exceed that defendant's ability to pay.]

[Punitive damages may not be used to punish a
defendant for the impact of [his/her/its] alleged
misconduct on persons other than [*name of plaintiff*].]

(Judicial Council of California Civil Jury Instructions (2013) CACI No. 3949.)

"In making the ... assessment [the court is] afforded guidance by certain
established principles, all of which are grounded in the purpose and function of
punitive damages. (Footnote omitted.) One factor is the particular nature of the
defendant's acts in light of the whole record; clearly, different acts may be of
varying degrees of reprehensibility, and the more reprehensible the act, the

12

greater the appropriate punishment, assuming all other factors are equal. (Citations.) Another relevant yardstick is the amount of compensatory damages awarded; in general, even an act of considerable reprehensibility will not be seen to justify a proportionally high amount of punitive damages if the actual harm suffered thereby is small. (Citation.) Also to be considered is the wealth of the particular defendant; obviously, the function of deterrence ... will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort. (Citations.) By the same token, of course, the function of punitive damages is not served by an award which, in light of the defendant's wealth and the gravity of the particular act, exceeds the level necessary to properly punish and deter." (*Neal v. Farmers Ins. Exch.* (1978) 21 Cal. 3d 910, 928.)

"'[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.' (Citation.) We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. (Citation.) The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect. It should be presumed a plaintiff has been made whole for his injuries by compensatory

damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence. (Citation.) (*State Farm Mut. Auto. Ins. Co. v. Campbell* (2003) 538 U.S. 408, 419.)

The court evaluates defendant's conduct only insofar as it pertains to the conversion claim because that is the only claim that supports an award of punitive damages. As to that claim, the court finds defendant's conduct was significantly reprehensible. Although only financial, and not personal, injury has been proven, defendant acted repeatedly, as he converted a number of separate items of personal property, and intentionally and through misrepresentation of his intentions to plaintiff. As evidence of plaintiff's financial standing, the court accepts defendant's financial statement, received in evidence as Exhibit 9. Based on defendant's conduct, the compensatory damage award related to plaintiff's conversion claim, and defendant's financial condition, the court awards punitive damages of $100,000.

E. Defendant's Credit Claim.

Defendant maintains he is entitled to a credit for repairs to the property he paid for during his tenancy. This claim is based on the testimony of Kenneth Petrelli, his only witness at trial. Petrelli testified he is a general contractor and has known defendant since he worked with his father on a

14



number of construction projects going back to the 1970's. He has done work for defendant in the past.

Petrelli testified he performed a variety of jobs for defendant on the house, all of which is reflected in invoices he prepared after the fact. However, Petrelli testified to facts which are inherently improbable and, given his relationship with defendant and his family, the court rejects all of his testimony.[4] Even if the court were to accept Petrelli's testimony, there is no evidence that written notice or an opportunity to repair were ever provided by defendant to plaintiff, as required by the paragraph 14 of the agreements between the parties. Accordingly, defendant's claim for a credit or offset is denied.

IV.

DISPOSITION

The court finds in favor of plaintiff on his claims for breach of contract and conversion and awards compensatory damages of $209,433.02, punitive damages of $100,000.00 and plaintiff's costs of suit. The court also finds in favor of defendant on plaintiff's claim for fraud. The court finds plaintiff is the prevailing party herein.

---

[4]First, Petrelli testified he had a client who gave him, without charge, an expensive Viking stove to be installed in the subject house because the oven wasn't working on the stove that had been installed there. Accepting this testimony would require the court to believe that one expensive Viking stove was removed from the house simply because the oven wasn't working and replaced with another similar Viking stove which was essentially given to defendant free of charge. Second, Petrelli testified that all of his invoices were paid in cash despite the fact that some were in the thousands of dollars. This is a method of payment which is conveniently difficult to verify and no attempt was made by defendant to do so through bank statements or otherwise.

Plaintiff is ordered to prepare a form of judgment, seek the approval of defendant as to the form, and submit it to the court for signature.

Dated: October _10_, 2014

Donald S. Black
Judge of the Superior Court

16